All right, with that, we will begin. We have, we'll start with case number 23-50144, Kallig Enterprises v. Affiliated FM Insurance, and we'll begin with Todd Lipscomb for Kallig. And please tell me how to pronounce it. I'm sure I got it wrong. Thank you, Your Honor. I refer to them as Kallig, and I refer to the defendant just as Factory Mutual, as in the insurer, because they often are referred to it that way. May it please the Court. My name is Todd Lipscomb, and I represent the Kallig Auto Group on their insurance claims here today. Since the briefing, and within approximately the last month, an important case came down that affects this. It's the Rodriguez case from the Texas Supreme Court. On certified question from the Fifth Circuit, Texas Supreme Court answered the question, does insurer's payment of the full appraisal award and any possible statutory interest preclude the recovery of attorney's fees? In response, Texas Supreme Court said yes. In many ways, that's what this case is about today. Did they satisfy those elements on summary judgment? Granted, it's come down after the district court made its opinion. It's come down after the opinion. But there's two things that have to be there. They didn't satisfy either one. A, they didn't pay the full appraisal award and all amounts due under it. And B, they did not pay all statutory interest. In particular, there's a factual question about the cruel date for interest owed under the Prompt Payment Act. And B, they paid zero interest in prejudgment interest, which is defined by the statute under the Texas Finance Code. So as such, we are not precluded from the recovery of attorney's fees. This morning, there was a handout. Unfortunately, Pam was nice enough to help me with it. And it's a sheet showing the payments by the insurance carrier. I apologize, it's a little bigger than what you're used to. But when I had a smaller version, it was completely unreadable. So this is the best I could do on a similar sheet. This reflects the way the claim was paid. And if you look at the left-hand column, this was a demonstrative exhibit in the record? It is in the record. And if you look at the top, these are the records from the summary judgment. And on the bottom right-hand is the appellate record reference number, this 23-521. Oh, yeah, I see, on the side. And it's the same thing on the right-hand side, too. I just put them side-by-side so that you could see them. And so if you look at the left-hand side, this is the appraisal award. And it identifies four different locations or four different properties. And it shows an RCV amount and then an AC amount, which is the difference in the recoverable depreciation. In the end, that came to a total of $1,169,000. The carrier took a $100,000 deductible, a prior payment that was made in 2019 for $756,000 and some change, and then tendered in 2021 after the appraisal award $313,000. That reflects, at the end of the day, the full ACV value. The problem with that position is the carrier was aware that we were entitled to some recoverable depreciation. They knew that but paid zero in recoverable depreciation. The trial court got this issue completely wrong. The trial court did the opposite. Rather than looking what was paid under the appraisal award, it looked at the right-hand side of the page. This is the adjuster's payments of how he tried to do that original $758,000. And so what you'll see on this, if you go down to the very last one, because that's the easiest, is the car wash. There's an item on here for skylights. Let me just stop you a little bit. Sure. And it's going to be helpful for me to re-listen to the oral argument to hear these facts. But am I right? So the argument you're making to us is a factual one. It's not a legal one that a burden to show that you did repairs that therefore had to be reimbursed at replacement cost prior to two years after, what, April 13, 2021? Is this a legal issue or is this a factual issue? You're starting out factual. This is a purely factual issue. And I'm taking the easy route. And the reason why you accept that the burden was properly placed on you. I disagree with it, but I don't think we reach that here today based upon these facts. And the reason for that is the only repairs that are in the record as it exists are repairs that were done within the two-year window. There was a very limited amount of repairs that were shown in that. We go back on it, maybe a different issue. Only repairs at issue are repairs that were done within the two-year issue. So they owed you an appraisal award and you're saying that appraisal award as to what category of repairs wasn't fully paid for. Exactly. Okay, which category? Because it looks like the skylights were. And that's the difference. And it's easy to confuse that. So if you look at what happened is in the appraisal award, if you look at the car wash, correct? The RCV value is $24,813. The actual cash value is $20,223. So you notice roughly a $4,600 amount of recoverable depreciation that has been withheld in the appraisal award. Roughly about 18%, 18.5%. If you come over to the right-hand column, this is what the adjuster did. If you look at the car wash, it totals $29,181.61. It's actually $5,000 higher than what the appraiser did. What's the difference between the two parties? If you're right on this math, and frankly, I'm sure it's in the brief, but I don't remember this level of focus just on fact additives. But if you're right, what is the difference between the two? It's a minimum of $4,000 and it could go up to as high as $130,000. $4,000 to $130,000? Correct. And you can't say definitively what you think it is? And that's where I'm going next. Okay. And so the reason for that is if you look at this car wash, you'll see that when the adjuster tried to pay it, they paid $29,000. Well, we know $5,000 of that when they paid the ACV, because that's all they ever paid, had been transferred to another building. And that's fine because they're paying the appraisal award. The problem is because they had $4,000 worth of depreciation being taken that has now not been paid. So that's how we know that's the floor. We know that there's $4,000 from the car wash, which by all accounts had either no or $88 worth of depreciation that had never been paid because they didn't pay any portion of it. Now then, how do I get to that range? If you look at the other buildings, if you go to the first one, the Subaru has skylights again. If you look at the Lexus, there's skylights, and part of it's $23,000, $31,000, $38,000, and then at the Volkswagen, there's roughly another $7,000. That's where those numbers come from. On the record we have, and in the appraiser's award, there's no allocation as to how much depreciation they took for those. So we know those repairs are done. We know that recoverable depreciation is owed, but it's not quantified anywhere in the record, because all we have is a simple number from the appraiser and a simple number for total ACV. So we know they owe $4,000. We don't know, based upon this summary judgment record, how much more that is. And so that's the quantifiable problem. And so that gets us to the first problem, Rodriguez. They never demonstrated that they paid the full appraisal award. Putting aside the code compliance issues, putting aside prevention doctrine or any of these other issues, it can be resolved simply by not doing that. Counsel, I'm just going to say, and I may be wrong, correct me if I am, I'm seeing you reference depreciation in your brief three times. Primarily, the argument you're making now is that page 35 carry over to 36 with three record sites. Yes, Your Honor. That is your primary appellate argument. It's the point, there's the sentence, the two sentences you make between page 35 and 36. There is a section that talks specifically about the skylights and the water leaks, and that's what this is expanding upon. These exhibits are here, and so those are the two items that we're looking at, which are the skylights and the water leaks. And it's uncontested that they haven't been paid, at least no recoverable depreciation on it. Well, the skylights were paid for, or no? No, they're not. And that's the trick. The appraisal award is only for ACV value, so it includes no recoverable depreciation. Okay. And so the 758, the full amount they paid, is accredited against ACV, and there's zero depreciation in it. That's just the math. When they say they paid it, that was what he tried to do with the adjuster, not the appraiser. We know the appraisers took at least $4,000 in depreciation just on the car wash and skylights alone. So that $4,000 at a minimum is owed. You see my befuddlement, it's just I like to be able to engage intelligently, but I'm not. This isn't what I remember. I've read all three I didn't see people saying this is a depreciation problem. Maybe it was clearly — It is. And I think in his opinion, he goes out — and this is where it comes up. He went to the record, and there's a chart in his opinion talking about this exact issue, and he confused the issue by saying it was the amount that was actually paid. But trying to pay it from the adjuster is different than paying an appraisal award. They never paid what the adjuster did. They tendered money up front, but that's when we lost the recoverable depreciation. I kind of have a feeling that coming here for an oral argument and preparing and all of that would cost more than $4,000, and they would have paid if that was all that was owed. So you're saying it could go up further than that. Please explain that. Sure. So if you see the skylights over here on the right side, that's about $90,000, if I recall, adding all those skylight issues together. We know a portion of that is recoverable depreciation. What we do not have in the is how much. And so it's some portion of that $90,000. The other aspect of it is, of course, the prejudgment interest, $57,000. Well, and attorney's fees. Although attorney's fees, if you get only $4,000 more, strikes me as not being what you've actually spent. Correct. And the attorney's fees issue, technically, I think since they didn't meet their burden on the statutory interest or on the underlying damages, we'd be entitled to the concept of attorney's fees. The problem is going to be the demand. You still have that 20%. And I think that's the heart of Rodriguez. Unlike other statutes, 542 came in and said, we are going to limit attorney's fees. There is no limit to that on prejudgment interest or anything else. And in Rodriguez, they went back and forth. What is a judgment? What is a claim in all these terms? And at the end of the day, they took a clear line approach. Even though the end result may have given them a little bit of heartache, they said it's not for us to do it, that's for the legislature. And so they said it's a mathematical formula. What the numerator is, in this case, zero, is divided by the denominator. Okay. What would help me is if you could give me the record site in your opposition to summary judgment where you specified that repairs had occurred prior to the two-year point. I don't have that note right here, Your Honor. If I can come back up and rebuttal, I'll have that citation for you. I know that — I'm sorry. No, no. Go ahead. I know that was discussed, but they said we did pay you. I mean, they paid this $700,000 or something pretty — reasonably early. Now, I realize y'all are a little bit arguing about what's the doodly-do on that, but they did pay that before they even had the appraisal. Absolutely. So that covered well more than y'all actually had paid. It does, but the problem becomes, if you look at the math, they only tendered actual cash value. So they have tendered $0 for recoverable depreciation. That was the crux of your appeal, was that they shouldn't have paid actual cash value because you gave them the invoices showing the repairs had been done. That's correct, and that's what's missing, is that despite an appraiser's note that they intended to pay that, that's not the same as paying an appraisal award. They tendered it, and what the appraiser did is different than the payment of appraisal award, and you can see that by the car wash. The appraiser tried to pay $29,000. Other than the $4,000, I'm still confused about what you're saying they didn't pay. I understand the interest, but the actual amount. Skylights and the water leaks, and so skylights at the Subaru building are $23,000 and $54,000. Okay, just go a little slower. The two categories of damages caused from the storm, the hail storm, that you say you weren't fully paid for are skylights and water leaks. Correct. And beyond interest and depreciation, doesn't it necessarily have to be that you gave them invoices to show that you completed those repairs prior to January 13th? Correct, and I can give you a record reference on that. So their adjuster, Bonilla, admitted she received all the invoices by December 4th through 6th, and this is the record at 1244 through 1246. And so she admits she had all those invoices, and she knew both the water leaks and the skylights had been repaired. And in fact, that's why she attempted to say, I'm not taking any depreciation from those items. The problem is the adjusters, or excuse me, the appraisers, when they entered the ACV, did. Can I just check, is KAH or KAU? I believe it's KAU. Oh, because it's KAH everywhere else. Yeah, I have an A here on this document. You have AU here, and that's why I was asking. So yes, I guess KAH. Everywhere else, and I just wanted to make sure we get it right. I'm being corrected, it's an H. Okay, fine. And am I right that their claim is that they did pay you, they acknowledged the repairs were done as to the skylights, they claim those payments were made in the appraisal ward? They say it's made in the appraisal ward, correct. So the disputed issue as to whether it was timely or not only relates to the leaks? To the plumbing leaks and skylights, correct. It's the way this record is developed right now. Okay. With regard to the prejudgment interest, and we think this is important, this is one I think Weiser Brown's controlling here, an opinion I believe you authored, and that is it's not the proof of loss is the correct date. It's the date that all items and necessary reforms were there. There's lots of fact questions. We argued three different dates. We think the court just flat out chose the wrong one, and that is about a $30,000 dispute, and we think that there's fact questions about what that date of loss was. Likewise, we had the prejudgment issue, kind of running out of time on here, but if you have any questions about that, I can address that afterwards. Okay, thank you. You saved time for rebuttal. Okay, and for the Affiliated FM Insurance Company, we'll hear from Shannon O'Malley. And with starters, your opponent thinks that Texas Supreme Court case is in his favor. Was that your impression? It wasn't. Okay, so why don't you address it? I'll be honest. I didn't think we were going to raise attorney's fees today because two weeks ago, the Texas Supreme Court did come out and state that when you promptly pay an appraisal award and prompt payment penalties, you're not entitled to attorney's fees. And the Texas Supreme Court did go through a specific mathematical analysis on that, and that applies here, too. We have paid the appraisal award. We have paid and we took from the appraisal award the prior payment, and the prior payment included both actual cash value measures and replacement cost measure for the repair cost for those skylights and whatever else that affiliated FM had evidence of what had actually been paid. So they didn't pay the actual cash value of the skylights. They paid the replacement cost because that's what they took out of the ACV measure when they paid the appraisal award. So because they paid the appraisal award in full, they paid everything that's due, there is no attorney's fees because the pre-suit demand was $2.3 million, which came down to $1.6 million after you take off the prior payments. And so the number is zero. Too high. Exactly. Okay. And what is your response to this deep emphasis on $4,000? You know, it was very telling that he doesn't know what the actual number is, and that's been the problem throughout this entire adjustment and the litigation. There's been no specific evidence of what is your claim, what is the basis for your claim, and what work did you do, where are the invoices to support that? So coming here for $4,000, that's, you know, that's a waste of time. It's unusual. I'm not going to say we've never had it, but it is unusual. That's why I'm asking you about it. Unusual certainly in insurance cases, in my experience, that the fight is over $4,000. Yes. But that's fine. He's also making this claim about interest, pre-judgment interest, and— Pre-judgment interest, yeah. No, that's actually been a very interesting one to dig into, and I do think that looking at the Texas Supreme Court analysis in Ortiz and Hinojos and Barber Technologies talks about, you know, especially Ortiz, that there has to be a judgment. There's no breach of contract when you actually pay the appraisal award and you pay it promptly. So if the insurance company is not liable for a breach of contract, how can it be liable for pre-judgment interest? There is no judgment, and the word judgment comes up in the Finance Code 302.102. There's a Texas Supreme Court case, Henson v. South Farm Bureau, where the court noted, insurers owe pre-judgment interest on top of the policy benefits only if they withheld those benefits in breach of the insurance contract. Under Ortiz, when we promptly paid the appraisal award, we were no longer considered breaching the—we never breached the insurance contract, but legally we were not in breach of the insurance contract, and therefore there should be no entitlement to pre-judgment interest. Okay. And what about this contention that while $4,000 seemed to be the easiest for your opponent to focus on, there's these other things, the skylights and so on. You said, well, we've already paid that, right? What is your response to the $4,000? Well, I don't really know where he got the $4,000, and maybe on— You said it's the car wash. The car wash. On his little thing on the left, there's four things under item. Right. Oh, I see. Car wash. That looks like $4,000 between them. And again, that goes back to what did they actually incur for the car wash? Show it to me. There's nowhere in the record for them to sit there and say, we incurred $4,813.07. I don't know where that is. This one on the left, the appraisal award, this is actually more information than we typically get in an appraisal award. You know, typically you might just get two numbers or even one number. Here's the replacement cost value. Luckily, the appraisers in this case gave us both replacement cost and actual cash value, and they did it by these four different locations, the Subaru, Volkswagen— The car wash isn't at Dominion or Volkswagen? Where is the car wash? I think that it's considered a separate building. It's a separate area. At the top of my mind, I don't remember exactly where it is. The Skylights and the Leaks, those are at the Volkswagen. Those were at Subaru. There were Skylights at Subaru. There were Skylights at Lexus. There were Skylights throughout. Yeah. And the Leaks, I mean, again, the Leaks is very amorphous because, you know, there was leaking through the Skylights. There were holes, you know, punctured holes in the Skylights. And those got repaired almost immediately. And as you're going through the record, one of the arguments they've made is, when does the prompt payment penalties accrue? You look at the letters from the insurance company, and they reference these Skylights. They say, hey, we understand you've gone out and made repairs. They did those almost immediately because they had big holes in their roofs. You don't want things leaking. You don't want things leaking. So they did those immediately. And FM said, hey, what have you done? How much did you pay? Can you give it to us? And they asked for lots of information. But when they asked for that information, they also told them why we're asking for that information. You know, they say, we understand you made repairs. We need to see those invoices because we want to know exactly what you've actually incurred. You don't get to just claim something without showing us what you've actually incurred. And so that's what they were doing. And there's a number of just repeatedly request after request after request. Ultimately, you got invoices that allowed you to pay for the Skylight. Right. And they were paid. And so, again, if you look at it on the right, you have ACV and RCV. It's the same number. And so... And the focus, I've thought, has always been on the leaks. I've paid less attention to the car wash. Right. I think the car wash is leaks. Oh, the car wash is leaks? Yes. Yeah. That's my understanding. Yes. Okay. Part of the difficulty is the appraisal award doesn't break down by location, correct? Well, it breaks it down by location, but it doesn't break it down by what the damage is at each location. All we have are these numbers. Oh, I see. Okay. What I'm calling leaks, but we can both call the car wash. There's nothing that confirms that amount was paid in the appraisal award? Exactly. Exactly. It wasn't? I don't know. No. I mean, we've paid the ACV of the appraisal award. We've paid the $1,169,541.39. You're saying you did pay? I'm saying FM has paid $1,169,541.39, less the deductible. True. That's my point. I'm trying to break it down because I thought, but again, correct me if I'm wrong, that you accepted, ultimately, they gave you invoices confirming the replacement timely for the Skylights. But I thought you didn't do that as to what I've been calling leaks. No. I don't think that there's a dispute on that. And if there is, it's not clear from the insured that we didn't pay for timely for leaks. I don't think that's the dispute. Well, I guess then I'll ask you the factual question. Did they or didn't they give you, in a timely fashion, invoices pertaining to the leaks? No. No. In fact, that was one of the main issues of the delay here is that FM asked for an examination under oath. And that was pushed off. We finally got to do it in January of 2021. And at that examination, the insured's representative said, we have done repairs. And so my colleague, Lindsey Bruning, asked, OK, well, can we have those invoices? And they said, well, we'll give them to our lawyers. And so we asked the lawyers, and they've never been given to date. So you claim they weren't timely. Well, we certainly don't have any evidence of it is the problem. Therefore, all you paid them was actual cash value. Plus the skylights and any other damages they did give us invoices for. Yes. And your point is this $4,000, they never gave you anything unique on that. So, I mean, you followed this whole bucket here. But if there was something specific on the $4,000, it wasn't given to you. Right. I mean, and like I said, the $4,000 number, I don't even know what that is. The appraisers know what that number is. What did they depreciate by $4,000? I don't, you know, sitting here today, nobody knows. That's what the appraisers did. So, you know, the lawyers and the insurance company at Kalig, they weren't involved in that. That's between Jonathan Caudill and Rondi Perry. OK. So I'd like to address briefly some of these other issues, which, I mean, overall, I think that it's important to remember the whole purpose of appraisal is that the Texas Supreme Court has recognized it's a really good tool for insurers and insurance company, sorry, insurers and insurance to come together and resolve a dispute that is supposed to have less costs, avoiding litigation, and be less expensive. And, you know, I think that with the advent of the cases, we've got Barber Technologies,  the Texas Supreme Court is again and again saying, please use appraisal and stop asking the courts to step in on these disputes. And that's what should have happened here. It doesn't make sense. Well, I bet the lawyers like that y'all are still coming to court. You know, I would rather that we could have resolved it. I understand that. I guess I'm a little bit, I guess, like I said, I'm a little confused about if $4,000 is in play, it just struck me that y'all would have been able to resolve that. But maybe I'm wrong on that. I know, this is— I've certainly had, as a lawyer, difficulties with opposing counsel on even small things, but it just struck me as a little bit unusual. But I guess your opponent is saying there's just a bunch of facts about things and we need to resolve that, obviously, in court rather than just ignore that so that doesn't allow for something short of a jury trial. What's your response to that? Well, my response is that in response to a motion for summary judgment, they had to raise a genuine issue of material fact. And these just general arguments and allegations, without any other further specific evidence, does not raise a genuine issue of material fact. And so that, to me, is the problem here. It's, you know, this is coming up—the $4,000 has never been raised as an issue before today in particular. And my opposing counsel stated it could be from $4,000 to $130,000. Well, I don't know where the $130,000 comes from because there's never been any evidence or information that shows that repairs and the scale of $130,000 has been done within two years or even started. So these allegations just out there that this could be an issue, this could be a fact issue, is not sufficient, is not evidence, and is not in the record and shouldn't be considered. Okay. Anything else you need to tell us? I would like to talk briefly about the doctrine of prevention. It's something that the insured is trying to argue that essentially if we pay the actual cash value as opposed to the replacement cost, then the appraisal dispute can go on. And it shouldn't. The purpose of the doctrine of prevention, I think that this Court said in Mendoza back in 2000, is that it's a well-recognized exception to the rule that when there's a condition in the policy to perform, the duty to perform doesn't arise until that condition occurs. And here the condition is actually doing the repair and doing it within two years. Or at least getting started. Or even asking affiliated FM, hey, can we have more time? None of that happened. And the same thing with the code upgrades. They're seeking $75,000 in code upgrades. The policy language says you have to incur that cost. And so the doctrine of prevention, though, it provides that when a promisor wrongfully prevents a condition from occurring, that condition is excused. In Mendoza, the Court recognized that the restatement of contracts, the prevention doctrine is subsumed under the duty of good faith and fair dealing. That wrongful conduct as opposed to some less culpable form of fault is required. So you can't invoke the doctrine of prevention unless you show wrongful conduct, unless you show that you've actually been prevented, and that you meet the equitable principles. Because it's an equitable issue. So if the delay is also on Calig's part, then they don't have clean hands. They shouldn't be invoking this. Additionally, there is no wrongful conduct here. Again, we voked the appraisal. We paid the appraisal. Texas Supreme Court says that's the way to do it. And there's no prevention. You know, the policy requires that they actually do the repairs before they get paid. So how can we prevent them from doing those repairs when we haven't paid them yet, when they need to incur those costs first? And the fact of the matter is, we paid $750,000, which is actually $800,000, $850,000 if you include the deductible, within eight months of the loss. They had 15 months to get started repairing their roofs. We're not talking about rebuilding a bunch of buildings that's going to take two or three years. We're talking about something that should take a few months at most. So the fact of the matter is, Calig hasn't done the work, and yet they're now trying to say, well, we should still get paid for the replacement costs, even though we haven't met that. Another topic I'd like to discuss briefly is this, when does prompt payment penalties accrue? I think that's important, because one of the things that I think the theme that the Texas Supreme Court has been pushing is use appraisal. Just get it done, guys. Try to get this resolved. And one of the theories that Calig is arguing is that as soon as the insurance company acknowledges that a loss has occurred, the insurance company is on the hook. That's when prompt payment penalties start to accrue. That's not what the statute says. That's not what the Texas Supreme Court says. I mean, the Texas Supreme Court has, I'm sorry, courts have recognized that they don't want to interpret this prompt payment act in a way that's going to harm negotiations between the insured and the insurance company. We don't want the insurance company to be walking on eggshells worried that they're going to trigger some prompt payment penalty. We want them to be able to talk to their insured and work with their insured and come together for a mutually agreed scope without having to go to appraisal, without having to go to litigation. And so in this case, FM said, look, your policy provides coverage. Here's what else we need. We need a scope of damage from you. We need to know what your measure of loss is. Here is a proof of loss. We will pay you when you fill out this proof of loss, either a partial payment or full. All of that happened on June 7th. That's not something that triggers the prompt payment penalty. That shouldn't get triggered until there's both acknowledged. Until they do what they're supposed to do. Yes. There you go. Yeah, exactly. And that's what the statute says. So, I mean, unless you have any other questions on this, I can give you back your time. But I feel like I've addressed what opposing counsel said. Okay. Thank you. Okay. Thank you so much. All right. Let's hear your rebuttal. Judge Higginson, in response to what you asked earlier, and I hope it's correct, I don't have the actual summary judgment responses. If you need those, I can get those pages for you. But in our briefing, it's pages in the appellant's brief 34 through 36, in a section labeled a genuine issue of fact remains around the status of repairs. And it describes an outline. In addition. Those are the pages I cited you to, where I thought the argument was. But you're telling me on rebuttal, you can't give me the paragraph in your response to summary judgment that identifies the issue of fact. Only because I don't have that briefing here with me today. And so I apologize for that. But I can get you that exact reference. But the court did take judicial notice of it in its opinion. And so on pages 1388 and 89 of the record, it says, this is the trial court. The court does recognize that plaintiff submitted invoices for repairs to Skylights and Leakes of the dealerships. And provides a reference number of 53-2, at 2. And it also acknowledges the reference, Bonilla also testified she had received such invoices. And that's at ECF 58-1. And there's record references on that as well. Okay. So just again, just simplify for me your memory of your response to the summary judgment. What, as concisely as possible, is the issue of fact that remains? That they did not pay recoverable depreciation. And we know that there's at least some element of pay recoverable depreciation when they paid the appraisal award. And it's just the idea of, it's. But they had already paid 700-something thousand after getting those invoices. It's far more than the invoices. And that's the accounting problem. That's the accounting problem. In the appraisal award, there is zero depreciation. Right? Under ACV, there's an amount of depreciation taken. And they, by their own admission, admitted they paid us no depreciation when they totaled the ACV amount. In response to the summary judgment, I'm going to find that you're saying the issue of fact is an accounting one pertaining to depreciation. Yes, Your Honor. That's what I'll find in that. You should. Yes, Your Honor. And the way we phrased it, I believe, is that issues of fact are here about the amount of recoverable depreciation. It may not go into as much detail about the car wash. But it points out what we're talking about here, that on the skylights and the leaks in those particular items, there was depreciation taken in the appraisal award that was not part of the original payment and has never been paid. Now, what I would also like to address, though, is the accrual date issue. And with that issue, she raises some points about it. But what we know is that the date chosen by the trial court was wrong. The trial court chose a date simply when a proof of loss was submitted. It's October of 2019. The statute says all items, statements, or forms necessary to secure final proof of loss. So it's when did you have those documents. And as the court has noted in the past, that's a very fact-intensive question. By simply choosing the date of the proof of loss itself, I think the court has rejected that on previous occasions. And so where we see the problem here is that's something that has to be determined by a fact finder that can't be decided on summary judgment. And that's really what we're here about today. And unfortunately, I know the dollar amounts are not as significant as that y'all deal with on a regular basis. Oh, and no, I mean, if the $4,000 was owed, I mean, and summary judgment granted wrongly on that, we would still reverse. I'm not suggesting otherwise. I just thought it was a little bit odd because that wasn't my sense of this case. And it does seem like something that can be resolved, which is what the Texas Supreme Court is saying. Please resolve this, y'all. And I do think that could have been resolved if it was solely $4,000. That's all I was saying. I was not saying we would rule incorrectly simply because it's $4,000, and we will rule what's correct. Let me use a number that's quantifiable. Because what we know about the skylights alone and the leak repairs, that's probably another $90,000, potentially in play. Now, it's only a portion of that. But because of the way the appraisal award is, because of this record, we don't know how much depreciation was taken from those items that was not paid in the ACB payment. And we just don't have that quantified now. And that's the fact question. It may be $4,000. We don't think it's the full $130,000. But it's some number within that range. And so we have a quantifiable amount that's not on the record today that should be explored at trial where you can come in there and say, there was this much depreciation taken on the skylights, and therefore, they still owe it. There's this much depreciation on the skylights at Lexus, which is approximately $69,000 in play. That's probably a factor of that, maybe 50%, maybe 20%. We don't know. What we know across the board is they took approximately 10% from those buildings. But we just don't have that quantified in the record here today. And that's why some are judged improper, because we have the fact question as to the actual amount. We have the fact question as to the accrual date. And we have the admission that in terms of statutory interest, because that's what the case says. It doesn't say just prompt payment of act interest. Statutory interest. They paid zero in prejudgment interest. And because of that, they never paid the full award. Thank you very much. Thank you. We appreciate both sides' arguments. This case is now under submission.